# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

MARINE AVETISYAN,

Petitioner,

v.

JAMES JANECKA et al.,

Respondents.

Case No. 5:26-cv-01138-DFM

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

## I.   INTRODUCTION

On March 11, 2026, Petitioner Marine Avetisyan, proceeding through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging her civil immigration detention without a bond hearing. See Dkt. 1 ("Petition"). Within her Petition, Petitioner sought a Temporary Restraining Order. See id. ¶¶ 45-51 ("TRO Application"). Respondents opposed Petitioner's TRO Application. See Dkt. 4. On March 18, 2026, District Judge Anne Hwang held a hearing at which she denied Petitioner's TRO Application. See Dkt. 6. On April 3, 2026, Respondents filed an Answer to the Petition. See Dkt. 8. On April 10, 2026, Petitioner filed a Reply. See Dkt. 9. On April 23, 2026, the undersigned Magistrate Judge held a hearing in this matter. See Dkts. 10, 13.

On April 28, Petitioner filed a Second Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, opening a new case and alleging a "distinct and newly presented constitutional claim not previously asserted in Petitioner's prior habeas filing" challenging her re-detention without pre-deprivation due process. See No. 26-02196, Dkt. 1. On April 30, 2026, the undersigned Magistrate Judge consolidated Petitioner's cases and directed Petitioner to file a consolidated petition in the surviving case. See Dkt. 14.

On May 14, 2026, Petitioner's counsel filed the operative, amended and consolidated petition, challenging: (1) Petitioner's re-detention without pre-deprivation due process; and (2) Petitioner's continued detention without any meaningful individualized custody determination despite the dismissal of the sole criminal matter previously relied upon by the government. See Dkt. 16 ("FAP"). On May 22, 2026, Respondents filed an Answer to the FAP. See Dkt. 18 ("Answer"). On May 24, 2026, Petitioner filed a Reply. See Dkt. 19 ("Reply").

Petitioner remains detained at the Adelanto ICE Processing Center. See https://locator.ice.gov/odls/#/search (search A-Number: "244236420," Nationality: "Armenia") (last accessed June 12, 2026). Information available to the Court indicates that Petitioner's immigration proceedings remain pending. See https://acis.eoir.justice.gov/en/ (search A-Number: "244-236-420," Nationality: "Armenia") (noting "[t]his case is pending" with an upcoming hearing on June 16, 2026) (last accessed June 12, 2026).

The parties consented to have a United States Magistrate Judge conduct all proceedings in this case. See Dkts. 21-22, 24.

For the reasons set forth below, the Petition is **GRANTED** and Respondents are **ORDERED** to release Petitioner from custody.[1]

---

[1] Petitioner's Request to Expedite (Dkt. 20) is **DENIED**.

## II.   BACKGROUND

Petitioner is a native and citizen of Armenia. See Dkt. 4-1. Petitioner entered the United States on or around October 24, 2023. See FAP ¶ 4. On or around that date, Petitioner was inspected and processed by the Department of Homeland Security ("DHS") and paroled into the United States on her own recognizance. See id. ¶¶ 4, 33-34; Dkt. 4-1. Following her release, Petitioner resided in Southern California with her family, complied with all U.S. Immigration and Customs Enforcement ("ICE") reporting requirements, attended regular check-ins, and pursued immigration relief. See FAP ¶¶ 5, 35.

On February 9, 2026, Petitioner was detained during a routine ICE check-in. See id. ¶ 37. Petitioner was not provided with advance notice that she would be taken back into custody or a pre-deprivation hearing before a neutral decisionmaker. See id. ¶¶ 38, 40. Petitioner challenges her re-detention without pre-deprivation process under the Fifth Amendment Due Process Clause. See id. ¶¶ 64-73, 80-91. Petitioner also challenges the applicability of 8 U.S.C. § 1226(c) to her detention. See id. ¶¶ 74-79. Petitioner seeks her immediate release and an order enjoining Respondents from re-detaining her without due process. See id. ¶¶ 106-09.

## III.   DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is "in custody" and challenges the constitutionality of that physical confinement. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012); Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

### A.   Statutory Framework

The parties dispute which statutory provision governs Petitioner's detention. Respondents argue that Petitioner's detention is governed by § 1225(b)(2) or, alternatively (or additionally), § 1226(c). See Answer at 4, 6-7. Petitioner contests the applicability of § 1226(c) to her detention, arguing that

3

her sole criminal issue arises from alleged conduct that pre-dates the Laken Riley Act and, in any case, her criminal case was dismissed in its entirety on March 5, 2026. See FAP ¶¶ 44-49; Reply at 2. Petitioner also argues that Respondents' reliance on § 1225(b) fails to cure the constitutional defect of her re-detention without pre-deprivation due process. See Reply at 2.

8 U.S.C. § 1226(c)(1)(E)(ii), which was added in 2025 by the Laken Riley Act, provides in relevant part that a noncitizen who is inadmissible as provided for in subparagraph (i) and "is charged with, is arrested for, is convicted of, admits to having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting . . . when the alien is released" is subject to mandatory detention pending a decision on whether the noncitizen is to be removed from the United States.

Here, the record indicates that Petitioner was arrested in 2023 and 2025 for grand theft. See Dkt. 4-2; Dkt. 15-1; Dkt. 16-1. As stated, Petitioner represents that the 2025 charges related back to 2023 conduct, which pre-dates the Laken Riley Act. See Reply at 2. Respondents acknowledge that "a bond hearing could clarify whether Petitioner's 2023 and 2025 charges were for the same or different charges." Answer at 6-7; see also Dkt. 5 at 2-3. As stated, Petitioner also contends that her sole criminal matter was dismissed in its entirety on March 5, 2026. See FAP ¶¶ 44-49; Dkt. 16-1 (apparent "Criminal Case Access" printout appearing to state that Petitioner's September 16, 2025 charge relating back to a December 26, 2023 arrest for grand theft under California Penal Code section 487(a) were dismissed under California Penal Code section 1385 on March 5, 2026); and see Dkt. 15-1 ¶ 12 (Declaration of Deportation Officer Jolene Velasquez stating: "On March 5, 2026, prosecutors dropped charges in the 25GDCF00420-03 case against [Petitioner].").

Many courts have found that § 1226(c)(1)(E) "is not retroactive," and thus would not apply to arrests or convictions suffered prior to the Laken Riley

Act's passage on January 29, 2025. <u>See</u> <u>Lopez Lopez v. Warden</u>, No. 26-3556, 2026 WL 1346694, at *2 (E.D. Cal. May 14, 2026) (collecting cases). Some courts have found that § 1226(c)(1)(E)(ii)'s "reference to a person who 'is charged with' or 'is arrested' for a theft-related offense, in the present tense, cannot be read to apply to a person has previously been arrested for and charged with a crime where they have also been acquitted of the crime." <u>E.C. v. Noem</u>, No. 25-1789, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) (citing <u>Santiago Helbrum v. Bondi</u>, No. 25-349, Dkt. 30 at 1 (S.D. Iowa Sept. 30, 2025) for its interpretation that § 1226(c)(1)(E)'s mandatory detention of a noncitizen who "is charged with" certain crimes does not apply after the charges are dismissed, because "it is no longer accurate to say that a person 'is charged with' theft (present tense)" after those charges are dismissed). While this Court is inclined to agree with the courts in <u>Lopez</u>, <u>E.C.</u>, and <u>Santiago Helbrum</u>, in this case, as noted below, the question of which section governs Petitioner's detention is not dispositive of Petitioner's due process claim.

The Court is cognizant of the current turbulence surrounding §§ 1225 and 1226. However, regardless of which detention provision applies, for the reasons discussed below, Petitioner was re-detained without the process the Constitution requires. <u>See, e.g.</u> <u>Subero v. Warden</u>, No. 26-2163, 2026 WL 1288645, at *2 n.2 (C.D. Cal. May 7, 2026).

**B.    <u>Substantive and Procedural Due Process</u>**

Noncitizens physically present in the United States are protected by the Due Process Clause of the Fifth Amendment. <u>See</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." <u>Id.</u> at 690 (citation omitted); <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987) ("In our society liberty is

the norm, and detention prior to trial or without trial is the carefully limited exception.").

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.").

Here, Petitioner was released from DHS custody in 2023 after inspection and processing. See FAP ¶ 34; Answer at 3; Dkt. 4-1. Since then, Petitioner lived in the community for years, attended required check-ins, and pursued immigration relief with her family. See FAP ¶¶ 5, 8-9. Her release, her lengthy period of conditional freedom, and her community ties created a constitutionally protected liberty interest in remaining out of detention. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) (recognizing that the lengthy duration of conditional release, as well as the meaningful

community connections made during that time, created "a powerful interest for Petitioner in his continued liberty").

**C.**    **The _Mathews_ Factors Weigh in Favor of Petitioner**

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

First, Petitioner has a significant private interest in remaining free from detention. She lived in the community for over two years after her release from DHS custody. During that time, she attended required check-ins and pursued immigration relief with her family. See FAP ¶ 5. Her continued liberty interest in remaining on release is undermined by her immigration detention without a pre-detention hearing. See Doe, 787 F. Supp. 3d at 1093-94. This factor weighs strongly in Petitioner's favor.

Second, the risk of erroneous deprivation is considerable. Petitioner did not receive a pre-deprivation hearing before a neutral decisionmaker before being re-detained on February 9, 2026. See FAP ¶¶ 37-40. Respondents fault Petitioner for withdrawing her request for a post-deprivation bond hearing in March 2026, see Answer at 7-8; Dkt. 15-2, but Petitioner argues that her request "was effectively foreclosed due to the Ninth Circuit stay in the Bautista class litigation." See Reply at 2. To be clear, the Ninth Circuit's stay of the Bautista December 18, 2025 declaratory judgment expressly preserves its

application within this District. See Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 (9th Cir. Mar. 6, 2026); and see Aguilar v. Mullin, No. 26-3709, 2026 WL 1196090, at *3 (C.D. Cal. Apr. 28, 2026). However, the Court nonetheless determines that the pursuit of administrative remedies would be futile and waives the prudential exhaustion requirement in this case considering Respondents' position that Petitioner is subject to mandatory detention under §§ 1225(b)(2) and/or 1226(c). See Lopez Lopez v. Warden, No. 26-3556, 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026).

In sum, because there have been minimum procedural safeguards to determine whether Petitioner's detention is justified, the risk of erroneous deprivation is high. See Doe, 787 F. Supp. 3d at 1094. This factor weighs in Petitioner's favor.

Third, the Government's interest in detaining Petitioner without a pre-deprivation hearing is low. See Hasratyan v. Bondi, No. 26-210, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) ("Finally, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."). While the Government has a "significant" interest in enforcing its immigration laws, Rodriguez Diaz, 53 F.4th at 1209, that interest is diminished where, as here, Petitioner lived in the community for over two years, attended immigration check-ins, and has a pending immigration case. Respondents released Petitioner in 2023 and did not seek to re-detain her until February 2026. See Doe, 787 F. Supp. 3d at 1094 ("The effort and cost required to provide Petitioner with procedural safeguards is minimal."). This factor weighs in Petitioner's favor.

All three Mathews factors weigh in Petitioner's favor. Respondents' re-detention of Petitioner without any hearing before a neutral decisionmaker violated her procedural due process rights under the Fifth Amendment.

8

**D.    Remedy**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy.

After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R., 791 F. Supp. 3d at 1036.

Here, the Court finds that Petitioner's detention without a pre-deprivation hearing violated her due process rights and rendered her detention unlawful. To the extent Respondents argue that Petitioner is entitled only to a post-deprivation bond hearing, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, [s]he will already have suffered the injury [s]he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

The Court's order is limited to remedying the procedural due process violation that has occurred. Petitioner requests that the Court also enjoin Respondents from re-detaining her "without due process." FAP ¶ 108. The Court declines to do so. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court, including any changed circumstances, the procedures Respondents employ, and the statutory authority invoked. The Court's ruling today addresses only the

lawfulness of Petitioner's current detention, which began on February 9, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this Order should be read to express any view on the lawfulness of any future detention decision.

## IV.   ORDER

The Petition is **GRANTED** as follows:

1.     Respondents are **ORDERED** to immediately release Petitioner Marine Avetisyan (A# 244-236-420) from custody, on the same conditions, if any, she had prior to her February 2026 re-detention. Petitioner's release is without prejudice to her obligation to appear before an Immigration Judge on June 16, 2026, and at all subsequent hearings as required in her immigration proceedings.

2.     Respondents are **ORDERED** to file a Notice of Release within five (5) days, attesting to Respondents' compliance.

Date: June 16, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge